Bray Jibril Murray, : 
                     Petitioner : 
                             : 
               v. : 
                             : 
Secretary John Wetzel; Superintendent : 
Mahally; Hearing Examiner C.J. : 
McKeown; and Lieutenant Corbett, :   No. 542 M.D. 2017
               Respondents :   Submitted: April 6, 2018


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: August 8, 2018


Before this Court are the preliminary objections (Preliminary Objections) of the Pennsylvania Department of Corrections' (Department) Secretary John Wetzel (Secretary Wetzel), State Correctional Institution (SCI) at Dallas Superintendent Lawrence Mahally (Superintendent Mahally), Hearing Examiner C.J. McKeown (Hearing Examiner McKeown) and Lieutenant Corbett[1] (collectively, Respondents) to Bray Jibril Murray's (Murray) pro se petition for review in the nature of a complaint for declaratory judgment, mandamus relief and compensatory and punitive damages (Petition) filed in this Court's original jurisdiction.[2]

---

[1] The parties did not list Lieutenant Corbett's full name in the documents filed with this Court.

[2] Murray states in his Petition: "ALL DEFENDANTS ARE BEING SUED IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, AS [DEPARTMENT] EMPLOYEES[] WHO, AT ALL TIMES, ACTED UNDER THE COLOR OF STATE LAW, TO DEPRIVE [MURRAY] OF HIS CONSTITUTIONAL RIGHTS, IN VIOLATION OF THE FEDERAL STATUTE, [Section 1983 of the United States Code,] 42 U.S.C. § 1983 [(Section 1983)][.]" Petition at 2. Section 1983 provides, in relevant part:

## Background

Murray is an inmate currently incarcerated at SCI-Dallas, and Respondents are Department employees. Until August 30, 2016, Murray was incarcerated at SCI-Benner. On March 6, 2017, Murray filed a complaint in the Luzerne County Common Pleas Court (common pleas court) asserting that, on August 3, 2016, while at SCI-Benner, prison staff alleged he had engaged in misconduct, issued a misconduct report[3] charging him, *inter alia*, with threatening staff and immediately placed him in the Restricted Housing Unit (RHU). Murray further avers that, on August 16, 2016, a Department Hearing Examiner found him guilty of misconduct and ordered him to spend 30 days in disciplinary custody in the RHU (August 16, 2016 Decision). Murray appealed from the August 16, 2016 Decision to SCI-Benner's Program Review Committee (PRC), arguing that the Hearing Examiner had improperly precluded Murray's witnesses from testifying

---

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any [s]tate . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.] . . .

42 U.S.C. § 1983.

"[T]he Eleventh Amendment to the United States Constitution shields states and state officials acting in their official capacity from Section 1983 actions." *Heinly v. Commonwealth*, 621 A.2d 1212, 1214 n.2 (Pa. Cmwlth. 1993) (citing *Will v. Michigan*, 491 U.S. 58 (1989)). This Court has explained that "[a]n action against [a defendant] in his official capacity . . . is the equivalent of an action against . . . a state instrumentality." *Law v. Fisher*, 399 A.2d 453, 456 (Pa. Cmwlth. 1979). Accordingly, state officials sued in their official capacities are not "persons" under Section 1983. *See Verrichia v. Dep't of Revenue*, 639 A.2d 957 (Pa. Cmwlth. 1994). Notwithstanding, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under [Section] 1983 because official-capacity actions for prospective relief are not treated as an action against the state." *Verrichia*, 639 A.2d at 962 n.11 (citing *Will*). Further, "state officials are 'persons' under Section 1983 and as such, may be sued **in their individual capacities** and found liable for damages for violating protected rights while in the course of their employment." *Schnupp v. Port Auth. of Allegheny Cty.*, 710 A.2d 1235, 1238 n.4 (Pa. Cmwlth. 1998) (emphasis added) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

[3] Murray identifies the report for the incident as Misconduct Report #939593.

despite Murray's timely submission of a witness request form. Murray alleges in the Petition that the PRC remanded the matter for a rehearing but, before a new hearing could be held, Murray was transferred to SCI-Dallas on August 30, 2016.

Murray also claims in the Petition that, despite SCI-Dallas' PRC finding that Murray had completed the 30-day disciplinary sanction for the August 2016 misconduct, upon his arrival at SCI-Dallas, he was immediately placed in disciplinary custody in the facility's RHU, the K-Unit (K-Unit). Further, Murray alleges in the Petition that a different hearing examiner - Hearing Examiner McKeown - conducted a second hearing on the same reported August 2016 misconduct, and notwithstanding that (1) the PRC found he had completed the 30-day sanction, (2) Murray's timely-requested witnesses were still at SCI-Benner and were not permitted to testify, and (3) video evidence was purportedly unavailable, the hearing proceeded and Murray was required to serve 60 days in disciplinary custody in the K-Unit. Murray also avers in the Petition that his appeal therefrom was denied.

Moreover, Murray claims in the Petition that supervisory Respondents Secretary Wetzel, Superintendent Mahally and Lieutenant Corbett subjected him to cruel and unusual punishment and/or were deliberately indifferent to his confinement conditions by housing him in a K-Unit cell without proper ventilation and without an in-cell emergency medical alert system, which violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Equal Protection Clause). Specifically, Murray avers in the Petition that the K-Unit cells are approximately seven feet by twelve feet, do not have windows to the outside, have only small windows in the cell doors, and do not have central air conditioning. Murray further asserts in the Petition that, on August 30, 2016, while the outside temperature was approximately 90 degrees, he was placed in a K-Unit cell with a Plexiglas screen covering the cell door window which prevented cool air circulation into the cell from the open windows and fans in the K-Unit's corridors. In addition,

3

he sets forth in the Petition that he remained in the K-Unit cell from August 30, 2016 until September 22, 2016, during which time the outdoor temperature was extremely high, and large fluorescent lights and a small 60-watt, staff-controlled light remained on from 6 a.m. until 10:30 p.m. Murray claims that the high temperature, lack of ventilation, and continuous use of "intensely hot" cell lighting that inhibited his sleep and increased the cell temperature constituted cruel and unusual punishment. Petition at 3, ¶27. Murray also alleges in his Petition that he experienced extreme heat exhaustion and chronic fatigue and, on several occasions, blacked out or lost consciousness, but was unable to notify staff because the cells in the K-Unit lack in-cell emergency medical alert buttons.[4]

Further, Murray avers in the Petition that, although he sent "request slips" complaining about the conditions in his cell and seeking a transfer to a cell without a Plexiglas screen over the window, no staff responded to the requests. In addition, Murray maintains that because all other SCIs have in-cell emergency medical alert systems, the similarly-situated inmates in SCI-Dallas have been subject to discrimination in violation of the Equal Protection Clause.[5] Murray seeks declaratory relief, preliminary and permanent injunctive relief, and compensatory and punitive damages.

On July 31, 2017, the common pleas court transferred the instant matter to this Court. On November 27, 2017, this Court ordered Respondents to file an answer or otherwise respond to the Petition within 30 days. On December 27, 2017, Respondents filed the Preliminary Objections demurring to the Petition, raising 4 issues in support of dismissing the action: (1) Murray failed to assert facts

---

[4] Murray avers in his Petition that on one occasion when he lost consciousness, he struck his head on a table in his cell.

[5] Murray also avers in his Petition that, although he was entitled to take three showers per week and to spend one hour outside of his cell each day, Respondents refused to permit him to do so because he covered the large fluorescent lights in his cell.

4

demonstrating the personal involvement of Secretary Wetzel, Superintendent Mahally and Lieutenant Corbett in the alleged deprivation of his constitutional rights; (2) with respect to the disciplinary hearings[6] - (a) to the extent Murray seeks review of the discipline imposed, such must be dismissed because this Court lacks subject matter jurisdiction, (b) to the extent Murray alleges a civil rights violation based on Respondents' failure to follow Department policies or regulations, the claim must fail, (c) to the extent that Murray contends he may not be housed in the K-Unit without explanation, an inmate has no constitutional right to be housed at a particular level, and (d) Murray's allegations that he was denied due process when his witnesses were not permitted to testify at the disciplinary hearing are meritless since a hearing examiner has discretion to determine relevant evidence and witnesses; (3) Murray has failed to state a claim that he was subjected to cruel and unusual punishment and deliberate indifference; and (4) Murray has not stated a viable claim that Respondents violated the Equal Protection Clause by failing to equip the K-Unit with an in-cell medical emergency alert system.

## Legal Analysis

Initially,

> [i]n considering preliminary objections, this Court must consider as true all the well-pleaded material facts set forth in the petitioner's petition and all reasonable inferences that may be drawn from those facts. Preliminary objections should be sustained only in cases clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief.

*Commonwealth ex rel. Smith v. Pa. Dep't of Corr.*, 829 A.2d 788, 792 (Pa. Cmwlth. 2003) (citation omitted). "However, unwarranted inferences, conclusions of law,

---

[6] Lacking certainty as to exactly what Murray alleges in his Petition with respect to the disciplinary hearing, Respondents raise several objections.

argumentative allegations or expressions of opinion need not be accepted." *Wilson v. Marrow*, 917 A.2d 357, 361 n.3 (Pa. Cmwlth. 2007).

## First Preliminary Objection
## Alleged Civil Rights Violation

In Respondents' first Preliminary Objection, they aver that claims against supervisory Respondents Secretary Wetzel, Superintendent Mahally and Lieutenant Corbett should be dismissed because the Petition does not include any factual allegations describing their personal participation in the alleged civil rights violations. *See Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988). Murray responds that the conditions in his K-Unit cell were so harsh that they constituted cruel and unusual punishment and he timely filed grievances. Murray further contends that Respondents' failure to address the conditions amounted to deliberate indifference thereto.[7]

> In *Rode*, the Third Circuit Court of Appeals explained:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Id.* at 1207 (citations omitted); *see also Horan v. Wetzel* (Pa. Cmwlth. No. 1425 C.D. 2013, filed May 28, 2014).[8]

---

[7] Presumably, Murray's reference to the filed grievances is intended to support his position that Respondents' failure to take action amounted to deliberate indifference. Notwithstanding, Murray does not aver in the Petition that Respondents were aware that he filed the grievances, and he did not allege facts to show they should have been aware.

[8] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

6

The United States Supreme Court has explained that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Further,

> an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, *cf.* [J. Hall, General Principles of Criminal Law] 118 [(2d ed. 1960)] (cautioning against 'confusing a mental state with the proof of its existence'), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Cf.* [1 W. LaFave & A. Scott, Substantive Criminal Law] § 3.7, p. 335 [(1986)] ('[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of'). For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.' Brief for [r]espondents 22.

*Farmer*, 511 U.S. at 842-43 (italics added; citations omitted).

More recently, the United States Supreme Court restated that "vicarious liability is inapplicable to . . . [Section] 1983 suits, [thus,] a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the United States Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676

7

(2009); *see also Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010) (holding that a prison superintendent was not legally responsible merely by reviewing the prisoner's grievances for the alleged retaliatory acts of his staff against a prisoner, when the prisoner did not demonstrate the superintendent's actual knowledge of the retaliation).

In *West v. Varano* (M.D. Pa. No. 1:10-CV-2637, filed Aug. 1, 2013, adopted August 29, 2013), 2013 U.S. Dist. LEXIS 123882,[9] a United States Magistrate Judge for the Middle District of Pennsylvania considered an Eighth Amendment action brought against a prison superintendent, explaining:

> [The inmate] names [the prison superintendent] as a defendant on his Eighth Amendment deliberate indifference claim, but his pleading contains absolutely no factual allegations relating to this defendant beyond his assertion that the defendant had oversight responsibilities for the operation of the prison. In considering claims brought against supervisory prison officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.
>
> Thus, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. *Morse v. Lower Merion Sch*[.] *Dist.*, 132 F.3d 902 (3d Cir. 1997); *see also Maine v. Thiboutot*, 448 U.S. 1 . . . (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of

---

[9] "'Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value.' Unreported federal court decisions may also have persuasive value." *Nagle v. Trueblue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016) (quoting *GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 n.15 (Pa. Cmwlth. 2016)).

actual knowledge and acquiescence in the challenged practice. *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997).

*West*, slip op. at __, 2013 U.S. Dist. LEXIS 123882, at *22-*24. Recommending dismissal of the prison superintendent from the lawsuit, the United States Magistrate Judge concluded:

> Here, [the inmate] does not allege that [the prison superintendent] directed the conduct complained of by the plaintiff, or had knowledge of that conduct and acquiesced in it. Rather, in the first instance [the inmate] simply alleges the superintendent was legally responsible for the overall operation of the prison. To the extent that [the inmate] premises liability of this particular defendant upon the assertion that he was legally responsible for the overall operation of the institution, without setting forth any further factual basis for a claim against him in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant.

*West*, slip op. at __, 2013 U.S. Dist. LEXIS 123882, at *22-*26.

In the instant matter, Murray alleges in his Petition that he was subjected to cruel and unusual conditions while incarcerated at SCI-Dallas, and that he repeatedly informed SCI employees. He also contends that he was denied equal protection of the law by his K-Unit cell not being equipped like other RHUs with in-cell emergency medical alert systems.

However, Murray does not aver any facts in his Petition evidencing that Secretary Wetzel's individual actions resulted in the objectionable conditions. Nor does Murray allege that Secretary Wetzel knew or would have reason to know of the alleged harsh conditions in one particular cell in one of the twenty-six Department SCIs, or that he was aware the K-Unit lacks an in-cell medical emergency alert system. In addition, although Superintendent Mahally oversees SCI-Dallas, Murray alleges no facts demonstrating Superintendent Mahally's personal involvement in, or

9

his awareness of Murray's particular confinement conditions, notwithstanding Murray's alleged grievances objecting thereto. Murray does not aver in the Petition that SCI staff responded to the grievances or that any further action was taken resulting in Superintendent Mahally's involvement with or knowledge thereof, and the Petition contains no factual averment describing Superintendent Mahally's awareness that there was no in-cell medical emergency alert system. Finally, Murray does not identify Lieutenant Corbett in the Petition or describe his position at SCI-Dallas or his specific individual participation in the alleged deprivation of Murray's constitutional rights. Because Murray makes no factual allegations concerning Respondents Secretary Wetzel, Superintendent Mahally and Lieutenant Corbett's personal participation in the alleged civil rights violations, this Court must sustain Respondents' first Preliminary Objection.

**Second Preliminary Objection**
**Alleged Disciplinary Hearing Violation**

Respondents' second Preliminary Objection challenges Murray's disciplinary hearing violation claims. With respect thereto, Murray asserts in the Petition:

> [Hearing Examiner] McKeown violate[d] the DOUBLE JEOPARDY, DUE PROCESS, and WITNESS CLAUSES of the FOURTEENTH and SIXTH AMENDMENTS to the United States Constitution, when he denied [Murray's] properly[-]requested defense witnesses to participate in disciplinary hearing (and establish a preponderance of evidence in favor of not guilty plea); and also, utilizes selfsame evidence (i.e., Misc. report #B939593[10]) in a second disciplinary hearing, and impose[d] a second[,] greater sanction.

---

[10] It appears that Murray is referencing Misconduct Report #939593.

10

Petition at 3, ¶23.[11]  He requests this Court to declare that such conduct violated his constitutional rights, grant a preliminary injunction ordering that Hearing Examiner McKeown's employment be suspended, grant a preliminary and permanent injunction ordering that Hearing Examiner McKeown's employment be terminated, and award compensatory and punitive damages.

Based upon Murray's factual allegations, statement of claims and prayer for relief, it appears that in seeking declaratory relief, Murray is also requesting this Court to declare the outcome of his disciplinary hearing void.[12]  With respect to Murray's challenges to the misconduct determination and his request for declaratory relief that his constitutional rights were violated thereby, this Court has explained that "[r]egardless of whether the action was brought as a direct appeal or in this Court's original jurisdiction . . . we do not have jurisdiction over [a misconduct determination]." *Edmunson v. Horn*, 694 A.2d 1179, 1181 (Pa. Cmwlth. 1997); *see also Bronson v. Cent. Office Review Comm.*, 721 A.2d 357 (Pa. 1998); *Brown v. Pa. Dep't of Corr.*, 913 A.2d 301, 305 (Pa. Cmwlth. 2006) ("This Court and our Pennsylvania Supreme Court have previously held that [the Department's] decision concerning charges of misconduct against an inmate are beyond this Court's appellate or original jurisdiction.").

Further, in making the general assertion that Hearing Examiner McKeown violated his due process rights, it is possible to infer that Murray is claiming that the hearing examiner failed to adhere to Department Regulations pertaining to witness testimony, or that the hearing examiner's decision to remove

---

[11] Respondents do not address in their Preliminary Objections Murray's double jeopardy claim.  Thus, that claim, brought solely against Hearing Examiner McKeown, remains.

[12] Pleadings filed by pro se litigants are liberally construed.  *See Mueller v. Pa. State Police Headquarters*, 532 A.2d 900 (Pa. Cmwlth. 1987).

11

him from the general prison population violated due process.[13]  "[A]n inmate does not have a viable claim under [Section 1983] based solely on a prison official's failure to adhere to a regulation, directive or policy statement."  *Yount v. Pa. Dep't of Corr.*, 886 A.2d 1163, 1169 (Pa. Cmwlth. 2005).  In addition, Respondents correctly assert that if Murray is claiming a due process right to remain in the general population, such claim must fail since this Court has long recognized that "remaining in a prison's general population is not a protected liberty interest."  *Chem v. Horn*, 725 A.2d 226, 229 (Pa. Cmwlth. 1999) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)).  Therefore, this Court sustains Respondents' second Preliminary Objection insofar as Murray seeks to invalidate the outcome of his disciplinary hearing, asserts a due process violation on the hearing examiner's alleged failure to adhere to Department Regulations, and/or claims a due process right to remain in the general prison population.

Respondents also contend in their second Preliminary Objection that Hearing Examiner McKeown acted within his authority in denying Murray's witness requests.  Recently, in *Curtis v. Canino* (Pa. Cmwlth. No. 160 M.D. 2015, filed March 6, 2017), this Court overruled a Department hearing examiner's preliminary objections based on a similar claim.  Therein, this Court explained:

> Petitioner also claims that [the Department's hearing examiner] violated his due process rights by denying his request to call two witnesses without any valid reason.  In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court explained that while the procedural due process rights of an inmate in prison disciplinary proceedings are limited, the inmate does retain certain protections.  Among these due process protections afforded to the inmate is the right to call witnesses and present documentary evidence in his defense, when permitting him

---

[13] The Department's Regulations require the Department to establish and maintain written procedures pertaining to inmate discipline which include the "[o]pportunity for the inmate to tell his story and to present relevant evidence."  37 Pa. Code § 93.10 (b)(3).

to do so would not be unduly hazardous to institutional safety or correctional goals. The Court explained in *Wolff* that the inmate does not have an unrestricted right to call witnesses and that any analysis into whether due process was given to the inmate requires the reviewing court to balance the rights of the inmate with the flexibility and discretion that is required for prison officials to administer prison affairs 'without being subject to unduly crippling constitutional impediments.' [*Id.*] at 566-67.

Petitioner alleges that he submitted the requests four days prior to the . . . hearing, that each of these witnesses would have given exculpatory testimony and that the witnesses were confined on the upper section of the housing unit directly adjacent to where the hearing was held. In the amended complaint, Petitioner identifies one of the two witnesses by name and alleges that this individual was his cellmate at the time that the incident that was the subject of the misconduct hearing occurred and would have corroborated Petitioner's version of the incident. The amended complaint does not contain any allegations concerning whether [the hearing examiner] based the denials on reasons related to institutional safety or correctional goals or whether [the hearing examiner] announced any reason for denying Petitioner's witness requests. In the absence of this information, we conclude that Petitioner has stated a claim that [the hearing examiner] violated his due process rights by denying his requests to call two witnesses at the misconduct hearing. *Cf. Melton* [*v. Beard*], 981 A.2d [361,] 365 & n.4 [(Pa. Cmwlth. 2009)] (dismissing inmates' facial due process challenge to the policy . . . that allows a hearing examiner to limit the evidence presented by inmates while noting that 'an abuse of the hearing examiner's discretion [to grant or deny requests for witnesses] as applied in a given situation could amount to a due process violation'). While we recognize that [the Department] was entitled to broad discretion in prison administration matters, in the absence of any indication that [the hearing examiner] based the decision to deny the witnesses for reasons related to institutional security and correctional goals we are constrained to overrule [the hearing examiner's] demurrer to this claim.

*Curtis*, slip op. at 5-7 (citations omitted).

In the instant matter, Murray alleges he made a timely request to present witnesses before the first disciplinary hearing at SCI-Benner, but the request was denied. He further contends the PRC agreed he had timely submitted the witness request form and remanded the matter for a new hearing. Further, Murray asserts that despite SCI-Dallas' PRC having concluded he had served the 30-day sanction imposed in the first hearing, Hearing Examiner McKeown held the disciplinary hearing on the same alleged misconduct. Murray avers that he re-submitted the witness request form and that timely-requested witnesses were still available at SCI-Benner, but Hearing Examiner McKeown arbitrarily denied his witness requests and imposed disciplinary sanctions.

Here, as in *Curtis*, "[t]he [Petition] does not contain any allegations concerning whether [Hearing Examiner McKeown] based the denials on reasons related to institutional safety or correctional goals or whether [he] announced any reason for denying Petitioner's witness requests." *Id.*, slip op. at 6. Thus,

> [w]hile we recognize that [the Department] was entitled to broad discretion in prison administration matters, in the absence of any indication that [the hearing examiner] based the decision to deny the witnesses for reasons related to institutional security and correctional goals we are constrained to overrule [the hearing examiner's] demurrer to this claim.

*Id.*, slip op. at 6-7. For these reasons, this Court overrules Respondents' second Preliminary Objection with respect to Murray's challenge to Hearing Examiner McKeown's refusal to permit his witnesses to testify at the disciplinary hearing and sustains their second Preliminary Objection in all other respects.

## Third Preliminary Objection
## Alleged Cruel and Unusual Punishment or Deliberate Indifference

Respondents assert in their third Preliminary Objection that Murray failed to state a claim for cruel and unusual punishment or deliberate indifference.[14] This Court has explained:

> Although correctional institutions are by their very nature restrictive and even harsh, the Eighth Amendment [to the United States Constitution (Eighth Amendment)] requires that the conditions of confinement do not include 'unnecessary and wanton' inflictions of pain that are 'totally without penological justification.' *Rhodes v. Chapman*, 452 U.S. 337, 346 . . . (1981). The United States Supreme Court has made clear that the Constitution does not mandate comfortable prisons, but 'having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, **the government and its officials are not free to let the state of nature take its course.'** *Farmer . . ., . . .* 511 U.S. at 833; *see also DeShaney v. Winnebago C[ty.] Dep['t] of Soc[.] Serv[s.]*, 489 U.S. 189, 199-200 . . . (1989) ('**When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.'**). Prison officials must ensure that inmates are not deprived of the 'minimal civilized measure of life's necessities,' including food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes . . . ,* 452 U.S. at 346 . . . ; *see also Farmer . . . ,* 511 U.S. at 833 . . . ; *Hutto v. Finney*, 437 U.S. 678 . . . (1978).

---

[14] Respondents base their Preliminary Objection, in large part, on the misperception that Murray is alleging a claim founded on deliberate indifference to a prisoner's serious **medical** need. *See* Respondents Br. at 12-14. However, Murray's allegations pertain to deliberate indifference to cruel and unusual confinement conditions. Curiously, the portion of Respondents' brief supporting this Preliminary Objection does not address Murray's allegations relating to oppressive and excessive heat in his cell.

15

As with an Eighth Amendment claim based on deliberate indifference to a serious medical need, in order to establish that prison conditions violate the Eighth Amendment **a prisoner must establish that prison officials were deliberately indifferent to conditions of confinement that constitute cruel and unusual punishment.** *Wilson v. Seiter*, 501 U.S. 294 . . . (1991). **In demonstrating that conditions of confinement are cruel and unusual, a prisoner may establish that some conditions of confinement 'have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example a low cell temperature at night combined with a failure to issue blankets.'** *Id.*, at 305 . . . ; *see also Hutto* . . . , 437 U.S. [at] 688 . . . (remedial order supported by 'the interdependence of the conditions producing the violation' of the Eighth Amendment ban on cruel and unusual punishment). . . . [T]he use of [RHUs] or isolation cells alone has not been held to constitute a violation of the Eighth Amendment ban on cruel and unusual punishment. *Hutto* . . . , 437 U.S. at 685, 687 . . . ; *Rivera v. P*[*a.*] *Dep*[*'t*] *of Corr*[.], . . . 837 A.2d 525 (Pa. Super. 2003) (holding conditions of confinement in long term segregation unit at SCI[-]Pittsburgh did not constitute cruel and unusual punishment).

The Pennsylvania Supreme Court has stated that '[j]ust what constitutes cruel and unusual punishment in the constitutional sense is a matter which defies concrete definition.' *Commonwealth ex rel. Bryant v. Hendrick*, . . . 280 A.2d 110, 116 ([Pa.] 1971). The Eighth Amendment seeks to secure the dignity of human beings and it is clear that the evolving standards of decency from which the words 'cruel and unusual' draw their meaning mandate that [the p]etitioners' confinement does not deprive them of the minimal necessities of life. . . .

Whether or not the adequacy of the conditions of confinement violates our society's evolving standards of decency is a searching inquiry that requires a balancing of the government's power to punish and legitimate interest in the orderly operation of correctional institutions with [a prisoner's] right to have [his] confinement be humane and free from the unnecessary and wanton infliction of pain. Such an inquiry, by its very nature, requires a careful

balancing of the needs and duties of the state with the rights of the individual, requires an investigation into what within this balance is a reasonable act, and requires, above all, an examination of what is and is not a permissible exercise of discretion on the part of [the Department].

*Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1041-42 (Pa. Cmwlth. 2014) (emphasis added).

This Court, accepting all allegations as true as we must, has significant concerns regarding the alleged confinement of a prisoner in a cell with virtually no ventilation, no air conditioning and continuous high intensity/heat producing lighting on days when the outside temperature exceeded 90 degrees. However, for the reasons set forth in the Court's discussion concerning Respondents' first Preliminary Objection, because Murray makes no factual allegations concerning Respondents Secretary Wetzel, Superintendent Mahally and Lieutenant Corbett's personal participation in the alleged civil rights violation, Respondents' third Preliminary Objection is sustained.

**Fourth Preliminary Objection**
**Alleged Equal Protection Clause Violation**

In their fourth Preliminary Objection, Respondents contend Murray failed to state a claim that Respondents violated the Equal Protection Clause by neglecting to equip the K-Unit with an in-cell medical emergency alert system because other SCIs have such systems.

In *Feigley v. Department of Corrections*, 872 A.2d 189 (Pa. Cmwlth 2005), this Court granted the Department's preliminary objections to a prisoner's claim that an SCI's commissary's smaller selection and higher prices, as compared to those of other SCI commissaries, violated the Equal Protection Clause. The *Feigley* Court explained:

17

The [E]qual [P]rotection [C]lause protects an individual from state action that selects him out for discriminatory treatment by subjecting him to a provision in the law not imposed on others of the same class. In *Curtis v. Kline, . . .* 666 A.2d 265 ([Pa.] 1995), our Supreme Court discussed the principle of equal protection as follows:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs.

*Id.* . . . at 267-68 (citations omitted). *So long as a classification is reasonable and based upon some ground of difference having a fair and substantial relation to the objective of the classification so that similarly situated individuals are treated alike, it is permissible . . . .*

*Feigley,* 872 A.2d at 195 (quoting *Correll v. Dep't of Transp., Bureau of Driver Licensing,* 726 A.2d 427, 430 (Pa. Cmwlth. 1999), *aff'd*, 762 A.2d 442 (Pa. 2001)). The *Feigley* Court recognized that differences in commissary pricing did not necessarily occur due to unreasonable classifications of inmates, but could result from differences in the SCIs' operations. Such differences could include "individual management decisions by the various commissary managers, the overall nature of the prison population (for example, male or female, largely urban or largely rural, geriatric or motivational boot camp), or the institution's location with respect to the supplier's locations." *Id.*

Likewise, federal courts have held that prisoners incarcerated at different state prisons are not similarly[-]situated for purposes of an equal protection claim. *See Williams v. Price*, 25 F. Supp. 2d 605, 622 (W.D. Pa. 1997) ("[B]ecause two

18

different prisons are involved, the death row inmates in the two prisons are not similarly situated for equal protection purposes."); *see also Hayes v. Lightner* (M.D. Pa. No. 4:14-CV-01922, filed October 14, 2015, adopted Nov. 5, 2015); *McKeithan v. Kerestes*, (M.D. Pa. No. 1:11-CV-1441, filed May 5, 2014, adopted July 28, 2014). In the instant case, the lack of an in-cell medical emergency alert system could result from management decisions deeming such systems unnecessary given other systems or methods used to monitor prisoners at SCI-Dallas. The law is well-established that:

> Prison officials are afforded a wide range of discretion in the promulgation and enforcement of policies to govern internal prison operations and must be allowed to exercise their judgment and to execute those policies necessary to preserve order and maintain security within Pennsylvania's State Correctional Institutions free from judicial interference.

*Tindell*, 87 A.3d at 1035. For this reason, the Court sustains Respondents' fourth Preliminary Objection.

## Conclusion

For all of the above reasons, Respondents' Preliminary Objections are sustained in part and overruled in part, and Respondents Secretary Wetzel, Superintendent Mahally and Lieutenant Corbett are dismissed from the action.

_____
ANNE E. COVEY, Judge

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bray Jibril Murray,                          :
                           Petitioner        :
                                             :
                    v.                       :
                                             :
Secretary John Wetzel; Superintendent        :
Mahally; Hearing Examiner C.J.               :
McKeown; and Lieutenant Corbett,             :        No. 542 M.D. 2017
                           Respondents       :

O R D E R

AND NOW, this 8th day of August, 2018, the Preliminary Objections of the Pennsylvania Department of Corrections' Secretary John Wetzel (Secretary Wetzel), State Correctional Institution at Dallas Superintendent Lawrence Mahally (Superintendent Mahally), Hearing Examiner C.J. McKeown (Hearing Examiner McKeown) and Lieutenant Corbett (collectively, Respondents) are sustained in part and overruled in part consistent with this opinion, and Respondents Secretary Wetzel, Superintendent Mahally and Lieutenant Corbett are dismissed from the instant action.

It is further ordered that within 30 days of the date of this Order, Hearing Examiner McKeown shall file an answer to the allegations and claims remaining against him.

_____
ANNE E. COVEY, Judge