Dennis Deitz,                 :
             Petitioner      :
                           :
          v.                :
                           :
PA Dep't of Corr.,           :     No. 15 M.D. 2020
             Respondent    :     Submitted: August 21, 2020


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: December 15, 2020

Before this Court are the Pennsylvania Department of Corrections' (Department) preliminary objections (Preliminary Objections) to Dennis Deitz's (Deitz) pro se petition for review in the nature of a complaint (Petition) filed in this Court's original jurisdiction. After review, we sustain the second Preliminary Objection and dismiss the Petition.

## Background[1]

Deitz is currently an inmate (No. HL9522) at the Department's State Correctional Institution (SCI) at Houtzdale. *See Inmate Locator*, PA. DEP'T OF CORR., http://inmatelocator.cor.pa.gov (last visited November 23, 2020). Deitz has been on high risk (H Code) status and the Department's Escape Risk List (ERL) since 2008.[2] On August 13, 2019, Deitz filed an Inmate Request to Staff Member

---

[1] The following facts are as alleged in the Petition.
[2] Deitz's H Code status and placement on the Department's Escape Risk List (ERL) resulted from his 2008 conviction for a 1983 escape from SCI-Camp Hill and an attack on staff.

(Form DC-135A) asking Facility Management for "a review or hearing" regarding his H Code status, because the incident that led to that status was more than 30 years earlier, and he had been restricted to a wheelchair for over a year. Petition ¶ 1, Ex. B. On August 18, 2019, SCI-Houtzdale staff responded: "This will be done at your annual review." Petition Ex. B; *see also* Petition ¶ 1.

On September 23, 2019, Deitz filed a follow-up Form DC-135A seeking the status of his August 13, 2019 request. *See* Petition ¶ 4, Ex. C. On October 4, 2019, SCI-Houtzdale staff responded that Deitz's request to have his H Code status changed was reviewed at his annual review and was denied. *See* Petition ¶¶ 2, 4, Ex. C.

On October 11, 2019, Deitz filed Inmate Grievance No. 828846 (Grievance), wherein he claimed that he was informed he would receive a hearing on his H Code status at his annual review, but no hearing was conducted in his presence and his status change request was denied. *See* Petition ¶ 3, Ex. A. On October 21, 2019, SCI-Houtzdale's Facility Grievance Coordinator rejected the Grievance because "it was not submitted within fifteen (15) working days after the events upon which claims are based [(i.e., his annual review)]." Petition Ex. D; *see also* Petition ¶ 4.

On October 22, 2019, Deitz appealed from the Facility Grievance Coordinator's decision to the Facility Manager, arguing: he timely filed the Grievance; he was not afforded a hearing to review his H Code status that he was promised; he is no longer a security risk because he is confined to a wheelchair; and the H Code status requirement that he move every 90 days is arduous. *See* Petition ¶ 5, Ex. E. On November 6, 2019, the Facility Manager upheld the Facility

---

*See* Department Br. at 3, 8. "Being on the ERL automatically causes an inmate to be labeled as High Risk." Department Br. at 4.

2

Grievance Coordinator's determination that the Grievance was not timely filed. *See* Petition ¶ 5, Ex. F.

On November 10, 2019, Deitz appealed from the Facility Manager's decision to the Chief Grievance Officer, again claiming that his Grievance was timely filed, and that he was told he would have a hearing on his H Code status at his annual review, but his annual review was conducted in his absence and he was not given the opportunity to explain why he should no longer be in H Code status. *See* Petition ¶ 6, Ex. G. On December 11, 2019, the Chief Grievance Officer agreed with the Facility Grievance Coordinator and Facility Manager and dismissed the Grievance as untimely filed. *See* Petition ¶ 6, Ex. H.

## Facts

On December 30, 2019, Deitz filed the Petition, wherein he stated:

> [T]here is a pattern of denial to adequate due[]process within the [Department] tribunal and the only wa[y] to have an adequate review is to present this issue to our courts. Eleven years without a hearing is cru[e]l and unusual punishment that has forced [Deitz] into not only significant hardships by having to pack up and move every (90) days while limited to a wheelchair, it is also atypical to any normal prison standard.

Petition ¶ 7. Deitz claims that he has not received due process in 11 years, and he has suffered many hardships while in a wheelchair. *See* Petition ¶ 8. Deitz adds:

> Deitz has not had a misconduct in eleven years and has done eve[r]ything an inmate could [do] to demonstrate rehabilitation, [s]o the question here is[:] what are the motives at SCI[-]Houtzdale, when rehabilitation does not matter and circumventing due process is the norm. [T]he constitutional rights of individuals ha[ve] become irrelevant.

3

Petition ¶ 9. Deitz requests that this Court "review this issue as it violates our [United States (]U.S.[)] Constitution and [Pennsylvania] constitution," and afford him due process by ordering the Department to grant him a hearing on his H Code status. Petition ¶ 10; *see also* ad damnum clause.

On February 28, 2020, the Department filed the Preliminary Objections in the nature of a demurrer, requesting Deitz's Petition be dismissed because: (1) Deitz received adequate due process in connection with his annual H Code status review; (2) Deitz's confinement on H Code status does not amount to any atypical or significant hardship in relation to ordinary incidents of prison life; (3) Deitz's annual H Code status review affords him adequate due process; (4) Deitz does not have a clear legal right to a hearing on his H Code status; (5) Deitz is not entitled to injunctive relief because he will not suffer irreparable harm if an injunction is denied; (6) the Court lacks jurisdiction over grievance and misconduct decisions; (7) this Court does not have jurisdiction over cases that do not involve constitutional rights not limited by the Department; (8) correctional facility operations are governed by the legislative and executive branches rather than the judicial branch; and (9) Deitz failed to allege any violations of the U.S. and Pennsylvania Constitutions.[3] *See* Preliminary Objections at 2-4.

On March 13, 2020, Deitz filed his response to the Department's Preliminary Objections, wherein he argued: (1) he was not afforded adequate due process because the hearing was conducted in his absence; (2) the Department's cited cases are distinguishable on the basis that he has spent 11 years (i.e., 4,015 days) in H Code status, the past several of which he was wheelchair bound; (3) if his annual review afforded him due process, he would not have filed the Petition; (4) he

---

[3] Deitz filed a Motion for Entry of Default Judgment (Motion), claiming that the Department had not filed a response to the Petition. This Court dismissed the Motion because the Department filed the Preliminary Objections.

4

suffers irreparable harm every 90 days when he has to move his property to a new cell by himself in the wheelchair, and he has heart issues; and (5) this Court should have jurisdiction pursuant to the U.S. and Pennsylvania Constitutions and Section 93.1 of the Department's Regulations, 37 Pa. Code § 93.1 (relating to the Department's publication and maintenance of directives and policy statements concerning inmate and Department employee interactions with the community). *See* Response to Preliminary Objections at 1-2.

On April 13, 2020, this Court ordered the Department to file its brief by May 15, 2020, and for Deitz to file his brief by June 15, 2020. The Department filed its brief in support of its Preliminary Objections on May 13, 2020. Because Deitz did not file a brief by June 15, 2020, on June 30, 2020, this Court ordered him to do so by July 13, 2020, and declared that, if he did not, the Court would proceed without it. *See* June 30, 2020 Order. Deitz did not file a brief.

## Discussion

The law is well settled:

> In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. Any doubt must be resolved in favor of the non-moving party.

*Dantzler v. Wetzel*, 218 A.3d 519, 522 n.3 (Pa. Cmwlth. 2019) (citation omitted).

> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review in the nature of a] complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases

5

> where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review in the nature of a] complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citation omitted). "[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review in the nature of a] complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

In its brief to this Court, the Department conflated its arguments in support of the Preliminary Objections to the following: (1) the Petition should be dismissed because Deitz's due process rights were not implicated by his H Code status and placement on the ERL (i.e., second Preliminary Objection); (2) the Petition should be dismissed because, even if due process is implicated, Deitz receives adequate due process in the form of his annual review (i.e., first, third, fourth and eighth Preliminary Objections); and (3) the Petition should be dismissed because Deitz failed to state a claim for injunctive relief (i.e., fifth Preliminary Objection).[4]

Since the viability of Deitz's claims rest, in the first instance, upon whether his segregated confinement implicates due process guarantees, this Court will first address the Department's second Preliminary Objection. "[T]o establish that the [Department] violated his Fourteenth Amendment right to due process, [Deitz] must establish that he has been deprived of life, liberty [or] property without due process of law. *See* U.S. Const. [a]mend. XIV, § 1."[5] *Silo v. Ridge*, 728 A.2d

---

[4] In its brief, the Department did not further argue its jurisdictional objections to the Petition (i.e., sixth, seventh and ninth Preliminary Objections).

[5] Section 1 of the Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "Due process under the Pennsylvania Constitution emanates

394, 399 (Pa. Cmwlth. 1999). "Procedural due process rights under the Fourteenth Amendment are triggered by a deprivation of a cognizable liberty interest." *Brown v. Blaine*, 833 A.2d 1166, 1172 (Pa. Cmwlth. 2003). Thus, "[i]n order to determine whether a due process violation has occurred, 'a determination must initially be made that a protected liberty interest exists, and if so, what process is due.'" *Chem v. Horn*, 725 A.2d 226, 229 (Pa. Cmwlth. 1999) (quoting *Wilder v. Dep't of Corr.*, 673 A.2d 30, 32 (Pa. Cmwlth. 1996)).

> [E]ntitlement to procedural due process, however, cannot be determined in a static environment, since due process is 'not a technical conception with a fixed content unrelated to time, place and circumstance.' *Gilbert v. Homar*, 520 U.S. 924, 930 . . . (1997). '[N]ot all situations calling for procedural safeguards call for the same kind of procedure,' *Commonwealth v. Batts*, . . . 163 A.3d 410, 455 ([Pa.] 2017), and the 'amount of due process that is due in any particular circumstance is flexible and calls for such procedural protections as the particular situation demands.' . . . *Dep't of Transp., Bureau of Driver Licensing v. Clayton*, . . . 684 A.2d 1060, 1064 ([Pa.] 1996).

*Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 897 (Pa. 2020).

This Court is mindful that, although "prisoners do not shed all constitutional rights at the prison gate," *Sandin v. Conner*, 515 U.S. 472, 485 (1995),

> [p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens. As the *Robson* [*v. Biester*, 420 A.2d 9 (Pa. Cmwlth. 1980) C]ourt observed, 'incarceration brings

---

from a number of provisions, including Article I, Sections 1, 9, and 11." *Muscarella v. Commonwealth*, 87 A.3d 966, 973 (Pa. Cmwlth. 2014). Article I, Section 1 of the Pennsylvania Constitution, Pa. Const. art. I, § 1, similarly protects life, liberty and property interests. Article I, Section 9 of the Pennsylvania Constitution provides, in pertinent part, that a person shall not be "deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." Pa. Const. art. I, § 9. Article I, Section 11 of the Pennsylvania Constitution states, in relevant part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law[.]" Pa. Const. art. I, § 11.

about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' [*Id*.] at 13 (citing *Price v. Johnston*, 334 U.S. 266 . . . (1948)).

*Bronson v. Cent. Office Rev. Comm.*, 721 A.2d 357, 359 (Pa. 1998).

Moreover, "[p]rison administrators . . . are afforded wide-ranging deference in their adoption and enforcement of policies that are necessary to preserve order, discipline, and security." *Sanders v. Wetzel*, 223 A.3d 735, 740 (Pa. Cmwlth. 2019). In particular, "it is entirely a matter of the Department's discretion where to house an inmate[,]" *Clark v. Beard*, 918 A.2d 155, 160 (Pa. Cmwlth. 2007), and "principles of due process impose few restrictions on the use of that authority." *Id*. at 161.

> The Department has exercised [its management] authority by promulgating regulations . . . . Section 93.11 [of the Department's Regulations] governs housing of inmates and provides as follows:
>
> > (a) An inmate does not have a right to be housed in a particular facility or in a particular area within a facility.
> >
> > (b) Confinement in a restricted housing unit (RHU), other than under procedures established for inmate discipline, will not be done for punitive purposes. The Department will maintain written procedures which describe the reasons for housing an inmate in the RHU and require due process in accordance and with established principles of law for an inmate who is housed in the RHU. Inmates confined in the RHU will be reviewed periodically by facility staff.
>
> 37 Pa. Code § 93.11. In accordance with [Section 93.11 of the Department's Regulations], DC-ADM 802 governs Administrative Custody [(AC)] Procedures and is applicable to all facilities operated under the jurisdiction of the [Department].

8

*Torres*, 997 A.2d at 1247-48.

The Department does not reference, and this Court did not locate, any Department Regulations or other policies specifically governing an inmate's H Code or ERL status or their attendant review. DC-ADM 802 sets forth the Department's AC procedures and specifies how reviews are to be conducted, but it is not clear whether DC-ADM 802 governs in this case.[6] In addition, although the Department's policies reference escape risks (*see* Policy 6.3.1, Section 13 and Policy 6.5.1, Section 13), those policies are not available to this Court for review on the Department's website.

Notwithstanding, the U.S. Supreme Court, in *Sandin*, reviewed the scope of an inmate's right to assert a due process challenge to placement in segregated confinement in a correctional facility. This Court in *Dantzler* summarized:

> [The] *Sandin* [Court] determined a state-created liberty interest could arise only when a prison's action imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Id.* [at 484]. The Court went on to point out that the punishment

---

[6] This Court observes that, according to DC-ADM 802, "[a] general population inmate may be assigned AC status . . . for the following reason(s): . . . (e) the inmate would pose an escape risk in a less secure status[.]" DC-ADM 802 § 1.B.1.e. DC-ADM 802 further specifies that the facility manager or his designee may request that an inmate be placed on the Restricted Release List (RRL) "when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern." DC-ADM 802 § 1.C.1. Criteria for placing an inmate on the RRL include a history of assaults against inmates or staff, escape attempts, and a threat to a facility's orderly operation. *See* DC-ADM 802 § 1.C.2. "The review and approval/disapproval of each inmate's status on the [RRL] shall be conducted annually." DC-ADM 802 § 2.D.10. However, the Department does not state that DC-ADM 802 governs or is otherwise applicable to the H Code status at issue here. DC-ADM 802 references "H [C]ode" only as follows: "If placement on the RRL is approved and an H Code has not been assigned, the counselor will initiate the DC-46[] Vote Sheet for this purpose, in accordance with Department policy 11.2.1, 'Reception and Classification,' Section 3." DC-ADM 802 § 1.C.6 (emphasis omitted). DC-ADM 802 does not reference the ERL.

of incarcerated prisoners serves the aim of effectuating prison management and prisoner rehabilitative goals and that discipline by prison officials in response to misconduct is within the expected parameters of the prisoner's sentence.

*Dantzler*, 218 A.3d at 523. "The [*Sandin*] Court held that confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). Citing *Sandin*, this Court has similarly ruled that "an inmate's placement in segregated confinement does not create an actionable liberty interest that would trigger due process protection." *Sanders*, 223 A.3d at 742; *see also Dantzler*; *Chem*, 725 A.2d at 229 ("[R]emaining in a prison's general population is not a protected liberty interest.").

Moreover, "[u]nlike disciplinary custody, there is no maximum period of confinement in [AC]. Rather, release depends upon an evaluation of many factors. While time spent and behavior are to be considered, so too are continued risk, safety of others, and recommendations of prison personnel, including treatment [by] staff." *Shoats v. Horn*, 213 F.3d 140, 142 (3d Cir. 2000). Nevertheless, even where a lengthy stay in AC may be considered the type of atypical and significant hardship that triggers procedural due process protections, the Court has concluded that the Department's policy of conducting annual reviews satisfies minimal constitutional due process standards. *See Nifas v. Wetzel* (Pa. Cmwlth. No. 1736 C.D. 2014, filed June 5, 2015) (despite 5 years on the RRL, the Department's annual review policy in DC-ADM 802 satisfied due process);[7] *see also Torres* (despite 2 to

---

[7] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, [and] not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). Accordingly, *Nifas* is cited herein for its persuasive value.

13 years in RHUs, the periodic review provided for in DC-ADM 802 satisfied due process); *Bowen v. Ryan,* 248 F. App'x 302, 304 (3d Cir. 2007) (per curiam) (despite 20 years on the RRL, the Department's AC procedures affording periodic review satisfied due process); *Shoats* (although 8 years in solitary confinement was sufficiently atypical and significant to create a protected liberty interest, periodic reviews prescribed by DC-ADM 802 satisfied due process).

Although it is not clear whether Deitz's H Code status and confinement as an escape risk is specifically governed by DC-ADM 802, Deitz's only claim regarding how his H Code status constitutes an atypical and significant hardship is that he must "pack up and move every [90] days while limited to a wheelchair[.]" Petition ¶ 7. He does not otherwise describe his living conditions. Although moving four times each year while in a wheelchair may be difficult for him, Deitz does not specify in the Petition how that is an atypical and significant hardship in relation to the ordinary incidents of prison life, particularly when the law is well settled that the mere placement in segregated confinement is not, itself, an atypical or significant deprivation that creates a liberty interest subject to due process protection. *See Sandin*; *see also Sanders*; *Dantzler*; *Chem.* Because Deitz's H Code status and placement on the ERL do not implicate due process protections in the first instance, the Department's second Preliminary Objection is sustained.[8]

## Conclusion

Because it appears with certainty based on the allegations in the Petition that the law will not permit the relief requested therein, Deitz cannot establish a clear

---

[8] In light of this Court's determination that Deitz failed to assert a liberty interest for which due process was required, this Court need not address whether the Petition should be dismissed based on the Department's other asserted Preliminary Objections.

11

legal right to relief.  Accordingly, the Department's second Preliminary Objection is sustained, and Deitz's Petition is dismissed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Deitz,                           :
                    Petitioner          :
                                        :
            v.                          :
                                        :
PA Dep't of Corr.,                      :    No. 15 M.D. 2020
                    Respondent          :

# O R D E R

AND NOW, this 15th day of December, 2020, the Pennsylvania Department of Corrections' second preliminary objection to Dennis Deitz's (Deitz) pro se petition for review in the nature of a complaint (Petition) is SUSTAINED, and Deitz's Petition is DISMISSED.

_____
ANNE E. COVEY, Judge