George **FEIGLEY**, Petitioner

v.

**DEPARTMENT OF CORRECTIONS**, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 7, 2005.

Decided Feb. 25, 2005.

Publication Ordered April 15, 2005.

---

George Feigley, petitioner, pro se.

Michael J. McGovern, Asst. Counsel, Camp Hill, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

This lawsuit concerns the management of the commissary at the State Correctional Institution at Frackville (SCI–Frackville), the institution where inmate George Feigley, the Petitioner, is incarcerated.

Before us for disposition is Feigley's "Motion for Partial Summary Summary Judgement [sic]," or, alternatively, for judgment on the pleadings or for default judgment, to Counts I and II of his "Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief" (Petition). Also before us are Preliminary Objections filed by the Department of Corrections (Department) to Counts III through V of the Petition.

Feigley alleges that, on April 10, 2004, he made a right-to-know request seeking: ALL the invoices, bills and statements of the vendors for goods sold to the institutional commissary at [SCI–Frackville] for the first quarter of 2004 including accountings of all spiffs, perks, and/or premiums given/awarded by the vendors to the institution and/or purchasing agent, staff and/or union(s) in connection with said purchases. I specifically request the actual record of quantities of goods delivered and paid for along with the prices actually paid. (Pet.¶ 10.) Vicki Flohr, a "right-to-know act officer" located in the Department's central office in Harrisburg, granted this request on April 29, 2004. Feigley, though, did not receive notice of the granting of his request until May 3, 2004. (Pet. ¶¶ 11–12.) Feigley then wrote · to Pete Damiter, the individual Flohr identified as responsible for producing the documents Feigley requested, and enclosed a "cash-slip" authorizing payment from his account for photocopies of the documents. (Pet. ¶ 12.) Damiter did not produce the documents; therefore, Feigley wrote to him again on May 13, 2004 and May 24, 2004. Feigley wrote again to Flohr on May 26, 2004, and, two days later, a "limited number of documents" were given to Feigley. (Pet.¶ 14.) After reviewing these documents, Feigley concluded that the Department was overcharging him for the photocopies. He asserts that he was charged fifteen cents per page for 150 copies but, according to the SCI–Frackville Prisoner

Handbook, photocopies are ten cents per page. (Pet.¶¶ 6, 15.) On May 28, 2004, he wrote to Damiter requesting a refund of the overcharge. (Pet.¶ 16.)

In addition, after examining the documents provided, Feigley avers that he discovered ·that the commissary "had been habitually overcharging him (and other prisoners) for some products." (Pet.¶ 17.) Consequently, on May 30, 2004, Feigley wrote to Richard Gavlick, the commissary manager, seeking a refund for those overcharges. In his correspondence, Feigley included copies of bills and itemized the claimed overcharges. Gavlick did not respond. (Pet.¶ 18.)

On June 7, 2004, Feigley filed a formal grievance, pursuant to the Department's Administrative Directive 804, DC–ADM 804,[1] seeking a refund for overcharges on purchases of commissary merchandise. (Pet.¶ 19.) On June 10, 2004, he filed a second formal grievance, asserting that there was a lack of good faith in producing the documents he had requested, some of which he still had not received. (Pet. ¶¶ 22–23.) Thereafter, Feigley did receive some additional documents on June 25, 2004. He alleges that he was, again, overcharged for photocopying. He grieved those overcharges as well. (Pet.¶ 23.)

Upon examining the commissary documents, Feigley alleges that he discovered that "the commissary engaged in unbusinesslike practices to the disadvantage of Feigley and other prisoners" (Pet.¶ 24), including marking up items 5.29%;[2] pur-

1. The Department's Administrative Directives are available at <http://www.cor.state.pa.us >.

2. Feigley pleads that under DC–ADM 815(VI)(D)(5)(a): "Commissary items selling prices shall be limited to a 5% maximum markup ... The 5% markup is to be based on the most recent regular pricing ... for the item. One-time promotional discounts need not be reflected in the pricing." (Pet.¶ 8.) We

note that under DC–ADM 815(VI)(D)(3), "Purchases by the facility commissary will be in accordance with established Inmate General·al Welfare Fund Procedures [ (IGWFP) ]...." Those procedures are not attached to the Petition or otherwise provided to the Court. Feigley does allege, however, that the IGWFP is intended to benefit the prisoners and is financed by money.obtained from inmates

chasing items for resale from vendors outside the Commonwealth, when lower prices were available for in-state purchases; and, failing to engage in centralized or bulk buying. (Pet.¶ 24.) He asserts that "the Governor has promulgated a public policy that Commonwealth agencies should do centralized purchasing from a single source and get the most advantageous price." (Pet.¶ 26.) He also pleads that SCI–Frackville has sufficient storage space to permit bulk purchasing and that the State Correctional Institution at Mahanoy, which is less than ten minutes from SCI–Frackville, offers a greater selection of items at "generally better prices." (Pet. ¶¶ 27, 28.)

Feigley's Petition contains five Counts.[3] Counts I and II are the subject of his Motion for Partial Summary Judgment[4] or, alternatively, for judgment on the pleadings[5] or for a default judgment.[6] In Count I Feigley asserts that there was no "overt posting" of the "terms and fees" for photocopies made in response to right-to-know requests, that production of the public records he sought was long delayed, that the Department's agents did not act in good faith, that they delayed or refused to allow duplication of public records, and that they overcharged him for photocopying costs. (Pet.¶ 31.) In Count II Feigley asserts that the Department and its agents violated Inmate General Welfare Fund (IGWF) "regulations," *see* n. 2, when they 1) imposed a markup in excess of 5% for certain specific products; 2) permitted an overall markup average in excess of 5%; 3) failed to afford inmates the advantages of discounts given to the Department's buyers by vendors; 4) refused to issue refunds for overcharges; 5) violated their fiduciary duties by buying items at retail and unreasonably high prices; and, 6) engaged in malfeasance and misfeasance by failing to buy by group or in bulk. (Pet.¶ 35.)

■ We must decide whether Feigley is entitled to partial summary judgment, judgment on the pleadings or default judgment on Counts I and II of the Petition. In asserting that he is entitled to such relief, Feigley contends that the Department has not filed an answer to those counts, although it did file Preliminary Objections to the other three counts. The Department counters that having timely filed Preliminary Objections to three counts in the petition, it did not need to simultaneously file an answer to the other two counts.

Chapter 15 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1501–1561, which establishes the Petition for Review practice, governs this case. In particular, Pa. R.A.P. 1502 establishes petitions for review as the exclusive procedure for judicial review of a determination of a governmental unit. *See also* G. RONALD DARLINGTON ET AL., PENNSYLVANIA APPELLATE PRACTICE §§ 1501:1, 1501:6 (2nd ed.2003) (discussing Petition for Review practice as employed in Commonwealth Court's original jurisdiction cases and noting that Petition for Review practice in-

---

and their loved ones. (Pet.¶ 29.) He asserts, further, that the buyers for the commissary act as the inmates' agents and "supposedly strive to provide Feigley and other prisoners with the best prices and best opportunities." (Pet.¶ 29.)

3. We note that Feigley attempts to augment the averments in his Petition by making various allegations in his three briefs and by attaching documents thereto. Factual dis-

putes are framed by pleadings, not briefs; therefore, we do not consider these additional allegations and documents.

4. Pa. R.C.P. No. 1035.2.

5. Pa. R.C.P. No. 1034.

6. Pa. R.C.P. No. 1037(c).

cludes not only "review" of government actions as that term is generally understood in the context of an appeal, but also cases requesting that the Court, acting within its original jurisdiction, *inter alia,* enter an injunction or grant declaratory judgment relief.) The Pennsylvania Rules of Civil Procedure apply only to the extent that no rule under Chapter 15 covers a matter. Pa. R.A.P. 106; Pa. R.A.P. 1517.

Under Chapter 15, preliminary objections are considered a type of responsive pleading to a petition for review. Pa. R.A.P. 1516(a). The Department had 30 days after service of Feigley's petition in which to file its Preliminary Objections, Pa. R.A.P. 1516(c), a deadline it met. Because these Preliminary Objections are pending before the Court, the filing of an answer to the Petition would be premature. *See Advance Bldg. Servs. v. F & M Schaefer Brewing Co.,* 252 Pa.Super. 579, 384 A.2d 931, 932 (1977) (until preliminary objections are resolved, a defendant is not required to file an answer).[7]

Admittedly, the existence of multiple counts, only some of which were the basis for preliminary objections, was not a fact present in *Advance Bldg.* We have found no case law, however, which states that a simultaneous answer must be filed to counts to which preliminary objections are not filed. Further, we do not think such a ruling would be prudent because, where preliminary objections are sustained, the party who filed the complaint has an absolute right to plead over and may choose to do so. Pa. R.C.P. No. 1028(d). In such a

situation the necessity for filing an answer to the original complaint is obviously mooted out and, to require a defendant to spend time crafting an answer to a complaint, that may be superseded by an amended complaint is impractical. Even where the lawsuit continues unaltered, once the counts and issues are narrowed by disposition of the preliminary objections, the outstanding factual averments requiring an answer will be refined. Thus, we conclude that a default judgment is not warranted here because there is no overdue answer or other type of default present in this case.

■ In addition, because we conclude that no answer is yet due, and because one has not yet been filed, the Department has not had an opportunity to contest the material facts alleged in Counts I and II; thus, they remain in dispute. Therefore, granting a motion for either summary judgment or judgment on the pleadings would be premature, because the grant of either motion requires that no material facts be in dispute. *See* Pa. R.C.P. Nos. 1035.2, 1034. Thus, Feigley's Motion must be denied.

We now turn to the Department's Preliminary Objections. We must decide whether Counts III–V of the Petition can withstand preliminary objections pertaining to 1) failure to attach a copy of a writing referred to in the Petition, 2) failure to state a cause of action (demurrer), and 3) insufficient specificity of pleading, respectively.

---

**7.** In *Advance Bldg.,* after preliminary objections were filed to a complaint, the plaintiff filed an amended complaint outside the time for doing so without leave of court and before the preliminary objections were disposed of. *Id.,* 384 A.2d at 932. The defendant did not file any response at all to the amended complaint and its preliminary objections remained outstanding. The plaintiff took a de-

fault judgment. The defendant then filed a petition to open or strike the judgment, which the trial court granted. *Id.* On appeal the Superior Court affirmed. It stated that, until outstanding preliminary objections are disposed of, the defendant was not obligated to file an answer and, therefore, the default judgment was improperly entered. *Id.* at 933.

■ In Count III of the Petition, Feigley alleges that the Department and it agents have violated the Governor's declared public policy by making purchases outside Pennsylvania and failing to buy in bulk. (Pet.¶ 39.) The Department preliminarily objects because Feigley has failed to attach a copy of the Governor's policy to his Petition in violation of Pa. R.C.P. No. 1019(i). This rule provides that "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof ... [to the pleading]." We agree that no writing is attached to the Petition and that it should have been. Therefore, we sustain this preliminary objection.

■ In Count IV, which Feigley entitled "Inequality Between Commissaries," he asserts that the Department and it agents have violated the Pennsylvania Constitution of 1968 by treating SCI–Frackville inmates "in an inferior way" to inmates at other state prisons because Frackville's commissary carries a smaller range of items and charges more for its merchandise. (Pet.¶ 42.) The Department has filed a demurrer to this Count.[8] A demurrer may only be sustained when, on the face of the complaint, the law will not permit recovery. *Stone & Edwards Insurance Agency, Inc. v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992), *affirmed*, 538 Pa. 276, 648 A.2d 304 (1994). All well-pled allegations must be accepted as true. *Id.*

■ As Judge Leadbetter has observed:

The equal protection clause protects an individual from state action that selects him out for discriminatory treatment by subjecting him to a provision in the law not imposed on others of the same class. In *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995), our Supreme Court discussed the principle of equal protection as follows:

The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs.

*Id.* at 255, 666 A.2d at 267–68 (citations omitted). *So long as a classification is reasonable and based upon some ground of difference having a fair and substantial relation to the objective of the classification so that similarly situated individuals are treated alike, it is permissible ....*

*Correll v. Dep't. of Transp., Bureau of Driver Licensing*, 726 A.2d 427, 430 (Pa. Cmwlth.1999) (emphasis added), *affirmed per curiam*, 564 Pa. 470, 769 A.2d 442 (2001).

In this case Feigley alleges disparate treatment because inmates at other prisons get "better deals" from their commissaries than do the inmates at SCI–Frackville. Such a situation does not necessarily result from an unreasonable classification of inmates. It may stem from such factors as individual management decisions by the various commissary managers, the overall nature of the prison population (for example, male or female, largely urban or largely rural, geriatric or motivational boot camp), or the institution's location with respect to the suppliers' locations. Thus,

---

8. Pa. R.C.P. No. 1028(a)(4).

we conclude that there is no unreasonable classification here and, consequently, no cause of action has been stated in Count IV. *Accord French v. Butterworth,* 614 F.2d 23, 25 (1st Cir.1980)(rejecting inmate's contention that he and fellow inmates have a constitutionally protected interest in purchasing food as cheaply as possible and opining that there is "no legal basis for a demand that inmates be offered items for purchase at or near cost"), *cert. denied,* 446 U.S. 942, 100 S.Ct. 2167, 64 L.Ed.2d 797 (1980). Therefore, we sustain this Preliminary Objection.

■ Finally, in Count V, Feigley alleges that the Department's Grievance System is "systematically misused" by the Department and its agents, and is employed to "deceive, misrepresent, and cover-up the truth in order to shield [Department] employees." (Pet.¶ 45.) He further contends that the system is used to cause delay and frustration, that the issues raised in grievances are "habitually ignored and distorted" and that the system is "utterly biased, unfair and unreasonable." *Id.* The Department has filed a Preliminary Objection, asserting that Feigley has pled no facts in this Count indicating that he has been harmed by the Grievance System.[9]

■ A pleading must be sufficiently specific to enable a responding party to prepare a defense. *Philadelphia County Intermediate Unit No. 26 v. Dep't of Educ.,* 60 Pa.Cmwlth. 546, 432 A.2d 1121, 1125 (1981). Further, specific averments, rather than mere notice pleading, are required in matters brought within this Court's original jurisdiction. DARLINGTON, § 1513:4. We agree with the Department that Feigley's vague and sweeping allegations, as quoted above, contain no real factual averments and do not enable the Department to prepare a defense to this

Count. Therefore, we will sustain this Preliminary Objection on the basis of insufficient specificity.

Accordingly, based on the foregoing reasoning, Feigley's Motion for Partial Summary Judgment is denied and the Department's Preliminary Objections are sustained.

### ORDER

NOW, February 25, 2005, Petitioner's motion for partial summary judgment is denied and Respondent's preliminary objections are sustained. Counts III–V of the Petition for Review are dismissed.