# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Sanders, : 
                Petitioner : 
                  : 
                  : 
         v. :   No. 314 M.D. 2017
                  :   Submitted:  June 8, 2018
John Wetzel, Secretary; : 
Michael Overmyer, Warden; : 
Josh Shapiro, Attorney General; : 
             Respondents : 

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE BROBSON       FILED:  December 16, 2019

Before the Court in our original jurisdiction are the preliminary objections of John E. Wetzel (Wetzel), Secretary of the Department of Corrections (Department), Michael Overmyer (Overmyer), Warden of the State Correctional Institution at Forest (SCI-Forest) (collectively, Department Respondents), and Josh Shapiro, Attorney General of the Commonwealth of Pennsylvania (Attorney General), to a petition for writ of mandamus (Petition) filed by Thomas Sanders (Sanders), alleging, in part,  a deprivation of due process.  For the reasons set forth below, we sustain the Attorney General's preliminary objection for failure to state a claim, sustain Department Respondents' preliminary objection for failure to state a claim, and dismiss the action.

In his Petition, Sanders sets forth the following averments of fact.  On January 30, 2017, while incarcerated at SCI-Forest, a correctional officer (Munson)

approached Sanders as he was using the telephone and requested to see his hands. Sanders complied with Munson's request, and Munson discovered a "marijuana stick" on the floor near Sanders. Several correctional officers then escorted Sanders to a separate room, at which time they conducted a strip search. During this search, correctional officers located drugs in a garbage can, which the correctional officers attributed to Sanders, apparently assuming he threw the contraband in the garbage can just prior to the strip search. Sanders received misconducts for possession of contraband.

As a result of these misconducts, Sanders received 90 days of disciplinary custody and the loss of his prison job. Upon the completion of his disciplinary custody, he learned that the Department recommended him for placement in the special management unit (SMU)—a housing unit that he avers is designated for inmates who are or have been disruptive or violent. Sanders avers that he received neither notice of the rationale for this recommendation nor an opportunity to appeal the recommendation. Thereafter, Sanders filed the instant Petition.

In his Petition, Sanders alleges that the Department violated DC-ADM 802[1] when placing him in the SMU. More specifically, Sanders asserts a procedural violation of DC-ADM 802—*i.e.*, the Department failed to provide Sanders with notice of the reasons for his placement recommendation and an opportunity to challenge the placement—and asserts a challenge to the

---

[1] We take judicial notice of Department policy DC-ADM 802, which appears on the Department's official website at:

https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/802%20Adm inistrative%20Custody%20Procedures.pdf

(Last visited December 13, 2019). *See Figuera v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on Department's website).

appropriateness of his placement—*i.e.*, whether he meets the criteria for placement in the SMU based on DC-ADM 802. Sanders seeks mandamus relief in the form of an order directing Department Respondents to comply with the requirements of DC-ADM 802 and to release him into the general prison population.

In response, Department Respondents and the Attorney General filed separate preliminary objections. Department Respondents argue: (1) the Court lacks jurisdiction over the matter; (2) the Petition fails to state a claim for mandamus relief; and (3) the Court lacks jurisdiction over Overmyer. The Attorney General objects to the Petition as it applies to him, arguing: (1) the Petition fails to articulate any facts to state a claim against him; (2) the Petition fails to articulate sufficient facts to join him as a party; and (3) Sanders lacks standing to assert a claim against him.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner. *Id.* "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong Cty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013) (en banc).

With the above standard in mind, we turn to the Attorney General's preliminary objections. The Attorney General first argues that Sanders has failed to

3

articulate any facts to state a claim against him. *See* Pa. R.C.P. No. 1028(a)(3). We agree, as a review of the Petition reveals no mention of the Attorney General aside from the caption naming him as a party. A pleading must be sufficiently specific to enable a responding party to prepare a defense. *Phila. Cty. Intermediate Unit No. 26 v. Dep't of Educ.*, 432 A.2d 1121, 1125 (Pa. Cmwlth. 1981) (en banc). "Specific averments, rather than mere notice pleading, are required in matters brought within this Court's original jurisdiction." *Feigley v. Dep't of Corr.*, 872 A.2d 189, 196 (Pa. Cmwlth. 2005). We agree with the Attorney General that the Petition sets forth no facts against him and, therefore, does not enable him to prepare a defense. Further, the relief Sanders seeks—*i.e.*, being afforded the benefit of the process and procedures found in DC-ADM 802—is strictly within the purview of the Department. Accordingly, we sustain the Attorney General's preliminary objection and dismiss him as a party to this action.[2]

We now turn to Department Respondents' first preliminary objection, wherein they object to this Court's jurisdiction over the Petition. Couching the Petition as an attempt to seek judicial review of the Department's decisions finding Sanders guilty of the misconducts and the Department's subsequent denial of Sanders's misconduct appeals, Department Respondents argue that such decisions are within the sole discretion of the Department and that this Court has no jurisdiction—original or appellate—to review such a decision.[3]

---

[2] As we dispose of the Petition as applied to the Attorney General on this ground, we need not address the Attorney General's remaining preliminary objections.

[3] To the extent that Department Respondents argue that Sanders cannot prevail on a mandamus action not involving constitutional rights not limited by the Department, we view such an argument as relevant to Department Respondents' second preliminary objection and not as a bar to this Court's jurisdiction.

4

As a general matter, we agree with Department Respondents that this Court does not have jurisdiction over inmate misconduct appeals. *See Bronson v. Cent. Office Review Comm.*, 721 A.2d 357, 358-59 (Pa. 1998) (holding Commonwealth Court has no appellate jurisdiction over inmate grievance and misconduct appeals). A review of the Petition, however, makes clear that Sanders is not asking this Court to review a misconduct or denial of a grievance. Rather, Sanders seeks a writ of mandamus to require Department Respondents to provide him with the notice and opportunity to challenge what, he contends, is required by DC-ADM 802 and to comply further with DC-ADM 802 by applying the criteria for placement set forth therein.[4] For these reasons, we overrule Department Respondents' preliminary objection based on lack of jurisdiction.

We now turn to Department Respondents' second preliminary objection, wherein they challenge the sufficiency of the Petition. Specifically, Department Respondents argue that Sanders has failed to state a claim for mandamus relief, as Sanders does not have a legal right to the process and procedures set forth in DC-ADM 802 nor do Department Respondents have a legal duty to comply with DC-ADM 802.

A writ of mandamus compels the performance of a ministerial and mandatory duty. *Chadwick v. Dauphin Cty. Office of Coroner*, 905 A.2d 600, 603 (Pa. Cmwlth. 2006), *appeal denied*, 917 A.2d 847 (Pa. 2007). To prevail in mandamus, the petitioner must demonstrate a clear legal right for performance of an act by the government, a corresponding duty in the government to perform the ministerial act and mandatory duty, and the absence of any other appropriate or

---

[4] Sanders does not aver that the Department recommended that he be placed in the SMU as part of the discipline imposed for his misconduct. Rather, Sanders appears to aver that, after completing his disciplinary custody, the Department recommended that he be placed in the SMU.

5

adequate remedy. *Filippi v. Kwitowski*, 880 A.2d 711, 713 (Pa. Cmwlth. 2005). A mandatory duty is "one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Id.* Where the public official has discretion in how to perform the act, mandamus may compel the exercise of discretion, but it may not interfere with the manner in which the discretion is exercised. *Chadwick*, 905 A.2d at 604. "A writ of mandamus is an extraordinary remedy," the purpose of which is "to enforce rights that have been clearly established. Mandamus may not be used to establish legal rights or to compel performance of discretionary acts . . . ." *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014) (citation omitted).

In considering whether a mandamus action may lie, we are mindful that "prisoners do not shed all constitutional rights at the prison gate." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Prison administrators, however, are afforded wide-ranging deference in their adoption and enforcement of policies that are necessary to preserve order, discipline, and security. *Dehart v. Horn*, 694 A.2d 16, 19 n.9 (Pa. Cmwlth. 1997). Moreover, we have held that the Department's policies generally do not create rights enforceable through mandamus and that the Department's failure to comply with a policy alone does not constitute a basis for a cause of action. *Shore v. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017) (holding DC-ADM 804 did not create right to issuance of decision in time period provided for therein).

In *Tindell*, we explained that "[a]llegations that corrections officers have failed to follow rules . . . adopted by prison officials that do not also allege this failure has violated a *clearly established statutory or constitutional right of a prison inmate* cannot state a claim for mandamus, because administrative rules . . . 'do not

6

create rights in prison inmates.'" *Tindell*, 87 A.3d at 1035 (emphasis added) (quoting *Cmwlth. ex rel. Buehl v. Price*, 705 A.2d 933, 936 (Pa. Cmwlth. 1997), *appeal denied*, 727 A.2d 1123 (Pa. 1998)) (holding that prison's alleged violation of rules regarding conditions of restricted housing did not provide basis for cause of action).[5]   In determining whether prison regulations relating to disciplinary confinement create liberty interests, the United States Supreme Court in *Sandin* focused its analysis on the nature of the deprivation.  The Supreme Court determined that a state-created liberty interest could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  Ultimately, the Supreme Court concluded that the prisoner's placement in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Furthermore, this Court has held that the Department's inclusion of "disclaimer language" in its policies is "sufficient to dispel any reasonable expectation that an enforceable right [was] created by the [Department's] policy." *Weaver v. Dep't of Corr.*, 829 A.2d 750, 753 (Pa. Cmwlth. 2003).  Thus, an administrative directive that includes waiver language does not create rights for inmates or obligations of the Department.

---

[5] We held in *Tindell* that a prisoner's alleged violation of *rules*—*i.e.*, administrative directives—regarding conditions of restrictive housing did not provide a basis for a cause of action. In addition, we also stated in *Tindell* that the Department's *regulations* do not create rights in prison inmates.  The cases cited in support thereof, however, do not necessarily support such a bright-line rule.  This Court has recognized instances where an inmate may require the Department, through an action in mandamus, to comply with its own regulations. *See Williams v. Wetzel*, ___ A.3d ___ (Pa. Cmwlth., No. 82 M.D. 2017, filed November 18, 2019); *Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010).

7

Here, Sanders seeks an order requiring the Department to comply with DC-ADM 802, which provides, in part, that "[i]t is the policy of the Department to place an inmate in Administrative Custody (AC) status whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility." DC-ADM 802, § III. It further provides: "All applicable procedures are contained in the procedures manual [(AC Procedures Manual)] that accompanies this policy document." *Id.*, § IV. DC-ADM 802 also includes what appears to be a disclaimer under the heading "Rights Under This Policy," which provides:

> *This policy does not create rights in any person* nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the [Department].

(*Id.*, § VI (emphasis added).)

Section 2D8 of DC-ADM 802, which is contained in the AC Procedures Manual,[6] provides, in part:

> *When an inmate is being recommended for transfer to a Special Housing Unit (Special Management Unit [SMU],* Secure Residential Treatment Unit [SRTU], Special Assessment Unit [SAU], etc.), the PRC [(Program Review Committee)] shall review the recommendation with the inmate and inform him/her of the reason(s) for the transfer recommendation. The inmate *shall* be given the opportunity to respond *in writing* to the rationale given and to object to his/her placement in a Special Housing Unit, if he/she so desires. The recommendation shall be documented on the DC-141, Part 4, with a copy to the inmate. The inmate may appeal the recommendation for

---

[6] Section 2 of the AC Procedures Manual pertains to administrative hearings, and subsection D thereof pertains to periodic review.

8

> Special Housing Unit transfer to the Facility Manager/designee and to the Office of the Chief Hearing Examiner . . . .

(Emphasis added, omitted, and in original.) Section 1B of DC-ADM 802, also contained in the AC Procedures Manual, addresses substantive criteria pertaining to placement in AC status generally.

For the reasons set forth above, to the extent that Sanders relies on DC-ADM 802 in support of his mandamus action, we sustain Department Respondents' preliminary objection on the basis that DC-ADM 802, as an administrative directive (*i.e.*, Department policy), does not create rights for Sanders or duties for Department Respondents. In reaching this conclusion, we note that the disclaimer language set forth in DC-ADM 802 makes clear that the policy does not establish *rights* in inmates. We are also persuaded by the decision in *Sandin*, wherein the United States Supreme Court concluded that an inmate's placement in segregated confinement does not create an actionable liberty interest.

We must continue our analysis, however, as Sanders also relies on the Department's regulation pertaining to Housing, set forth at 37 Pa. Code § 93.11(b), in support of his argument. Section 93.11(b) of the Department's regulation provides:

> (b) Confinement in a *restricted housing unit (RHU)*, other than under procedures established for inmate discipline, will not be done for punitive purposes. *The Department will maintain written procedures which describe the reasons for housing an inmate in the RHU and require due process in accordance and* [sic] *with established principles of law for an inmate who is housed in the RHU.* Inmates confined in the RHU will be reviewed periodically by facility staff.

37 Pa. Code § 93.11(b) (emphasis added). Although at first glance the relevant regulatory language appears to require the Department to provide some form of "due

9

process," a closer reading reveals that the required due process is limited to that "in accordance and [sic] with established principles of law for an inmate who is housed in the RHU." *Id.* As noted above, the United States Supreme Court has held that an inmate's placement in segregated confinement does not create an actionable liberty interest that would trigger due process protection. *Sandin*, 515 U.S. at 486. Thus, even if we were to conclude that Section 93.11(b)'s provisions relating to RHUs are applicable to SMUs, which the parties do not address, we would still conclude that the regulation cannot support an action in mandamus. This is because the regulation requires the Department to do no more than provide due process to the extent required by law, and the law does not require an inmate to be afforded due process in connection with placement in segregated housing. As a result, Sanders cannot establish a right or duty created by Section 93.11(b) as it relates to his placement in the SMU. For the reasons set forth above, to the extent that Sanders relies on Section 93.11(b) of the Department's regulations in support of his mandamus action, we sustain Department Respondents' preliminary objection on the basis that the regulation does not create rights for Sanders or duties for Department Respondents pertaining to Sanders' placement in the SMU.

Because we have sustained the preliminary objections discussed above, thereby resulting in the matter being dismissed, we need not address Department Respondents' preliminary objection, challenging this Court's jurisdiction as it pertains to Overmyer.[7]

---

[7] As to this preliminary objection, Department Respondents argue that this Court's original jurisdiction only extends to officers with statewide responsibilities and that Overmyer is not such an officer. On this basis, Department Respondents seek Overmyer's dismissal from this action.

Accordingly, we sustain the separate preliminary objections filed by the Attorney General and Department Respondents for failure to state a claim, and dismiss the action.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Sanders,                               :
                     Petitioner                :
                                              :
          v.                                  :          No. 314 M.D. 2017
                                              :
John Wetzel, Secretary;                       :
Michael Overmyer, Warden;                     :
Josh Shapiro, Attorney General;               :
                     Respondents              :

# **O R D E R**

AND NOW, this 16th day of December, 2019, the preliminary objection filed by Josh Shapiro, Attorney General, for failure to state a claim is SUSTAINED, and the preliminary objection filed by John Wetzel, Secretary of the Department of Corrections, and Michael Overmyer, Warden of the State Correctional Institution at Forest, for failure to state a claim is SUSTAINED, and the petition for writ of mandamus filed by Thomas Sanders is DISMISSED.

                                        _____
                                        P. KEVIN BROBSON, Judge