IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James T. Burke,                                    :
                                                   :
                        Petitioner                 :
                                                   :
            v.                                     : No. 452 M.D. 2019
                                                   : Submitted: February 28, 2020
Pennsylvania, Department of                        :
Corrections, Superintendent Laurel                 :
Harry and the Commonwealth of                      :
Pennsylvania                                        :
                                                   :
                        Respondents                :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  May 6, 2020


            Before the Court are the preliminary objections in the nature of a
demurrer (POs) of the Pennsylvania Department of Corrections (DOC),
Superintendent Laurel Harry (Superintendent), and the Commonwealth of
Pennsylvania (Commonwealth) (collectively, Respondents) to the Petition for
Review (PFR), styled as a "Civil Complaint," that was filed in our original
jurisdiction by James T. Burke (Inmate).  We sustain the POs and dismiss the PFR.

            Inmate is currently housed in a correctional facility in Mississippi;
however, he was previously housed in the J-Unit of the State Correctional
Institution at Camp Hill (SCI-Camp Hill).  On December 11, 2017, while housed
in the J-Unit, DOC staff issued a disciplinary report which resulted in Inmate's

transport to the Restricted Housing Unit (RHU). Because Inmate was taken directly to the RHU, on December 12, 2017, DOC staff packaged the contents of his cell, completed a Form DC-153 Inmate Personal Property Inventory without Inmate's signature, sealed the box, and stored Inmate's property until he was released from the RHU.[1]

Upon his release from the RHU, on January 4, 2018, Inmate filed a Form DC-135A Inmate's Request to Staff Member, in which he alleged that a number of items from his cell were either missing or damaged. PFR Exhibit 3. Inmate alleged that the J-Unit staff had packed up his "non-contraband personal property [] that [he] had purchased from [the] Commissary and failed to pack up the attached list of Commissary items because [he] never received them, [and his] Radio and T.V. were also damaged." *Id.*[2] He also stated, "Need replacement cost." *Id.*

---

[1] *See* DC-ADM 815, Section 1(C)(3) ("If the inmate cannot be physically present when his/her property is being packed and inventoried, or if he/she represents a security threat, two officers shall inventory and process the inmate's property and both officers will sign the **DC-153**. A notation will be made as to why the inmate was not present. The two officers will be responsible for sealing the boxes with sealing tape and signing his/her name over the tape.") (emphasis in original).

[2] Inmate attached the following itemized list: (1) "Clear R.C.A. T.V. damaged and missing the T.V.'s ear head-phone buds"; (2) "Clear Sony radio damaged, clear headphones damaged"; (3) "Five (5) 12' long headphone extension cables missing"; (4) "Two (2) Rio tobacco bags, and five (5) books of rolling papers"; (6) "Ten (10) Ramen Noodles Soups"; (7) One (1) Meatball in tomato sauce"; (8) "One (1) White extension cord"; (9) "One (1) B.B.Q. Chips"; (10) "One (1) Hershey Choc. Bar"; (11) "One (1) Raisin Bagel"; (12) "One (1) Plastic Rain Coat Poncho"; (13) "One (1) Hot Cocoa 10 oz. Bag"; (14) "One (1) Raisin Bran Cereal 20 oz. Box"; (15) "One (1) Dunkin Sticks 6 pk. 10 oz."; (16) "One (1) Max[well] House Coffee 4 oz."; (17) "One (1) Bic Disp. Razor"; (18) "One (1) Digital Flat Antenna"; (19) "One (1) Pair Ear Plugs"; (20) "One (1) Frosted Mini Wheats Cereal"; (21) "One (1) Strawberry Pastries"; (22) "One (1) Pencil Eraser Cap"; (23) "One (1) Pine Air Freshener"; (24) "One (1) Box of Tea Bags;" (25) "One (1) Antibacterial Soap"; (26) "One (1) Cocoa Butter Soap"; (27) "One (1) Sun **(Footnote continued on next page…)**

On January 8, 2018, the Staff responded that only the following items were listed on the completed Form DC-153: (1) "1 - T.V. - Not Noted As Damaged"; (2) "1 - Radio - [Not Noted as Damaged]"; (3) "1 Set of Earphones"; (4) "6 - Soups"; (5) "1 - Cigarette Paper"; and (6) "1 - Cigarette Pack." PFR Exhibit 3.

On January 9, 2018, Inmate filed a DC-804 Official Inmate Grievance (Grievance), in which he again asserted that the foregoing items were either damaged or missing, that he did not sign the Form DC-153 inventory, and that the total reimbursement sought was $335.17 and approximately $30.00 in taxes. PFR Exhibit 4.[3] On January 19, 2018, the J-Unit Manager denied Inmate's Grievance. *Id.*

On January 31, 2018, Inmate appealed the denial of his Grievance to the Facility Manager in which he assailed the grievance procedure at SCI-Camp Hill. PFR Exhibit 5.[4] On February 6, 2018, the Facility Manager dismissed

---

**(continued…)**

Glasses broken by staff"; (28) "One (1) Laundry bag missing with (2) purchased brown t-shirts"; and (29) "Typing Paper. Need replacement cost." *Id.*

[3] Inmate raised the same allegations regarding the confiscation of his property, noting that "on 12/11/2017, J-[U]nit Staff packed my non-contraband personal property up that I had purchased from [the C]ommissary and failed to also pack up or inventory the attached list of purchased [C]ommissary items as I never received all my purchased [C]ommissary [items] that [were] in my cell at that time and I never put my signature on the DC-153 inmate personal property inventory form that failed to list all the property that was in my cell, [and m]y Radio and T.V. were also damaged[.]" PFR Exhibit 4.

[4] Inmate alleged that "[a] fair and unbias[ed] grievance investigation would" establish that he "purchased every item of non-contraband property [that he] originally claimed in [his] grievance to have been purchased and is now missing." PFR Exhibit 5. He also claimed that the "grievance [o]fficer appears to be bias[ed] in favor of [the] Camp Hill [o]fficers who were **(Footnote continued on next page…)**

Inmate's appeal; however, on April 2, 2018, on further appeal to the Secretary's Office of Inmate Grievances & Appeals,[5] the Chief Grievance Officer remanded the matter to SCI-Camp Hill "for additional review and appropriate response." *Id.*

On remand, on April 30, 2018, the J-Unit Manager again denied Inmate's Grievance stating, in relevant part:

> You were released from the RHU on 1/3/18 and did not file this grievance until 1/9/18. By review of [the Inmate Cumulative Adjustment Record] during this 6-day span there was not one notation that you had spoken to any unit staff informing them of any issues with your property. When your property was returned to you, it was in a sealed box which you would have unsealed. Furthermore, you provided no evidence that your

---

**(continued…)**

involved," and that the "grievance [o]fficer also failed to investigate correctly, or at all my Camp Hill property purchases, or even ask to review a copy of my purchase documentations, never checked up on my damaged T.V. and Radio, and never even interviewed me to show the effects of my damaged T.V. & Radio, and missing property." *Id.* Inmate also asserted, "The alleged 'grievance system' at [SCI-Camp Hill] is now clearly documented as not only being BOGUS, but also a CORRUPT, BIAS[ED] & SLANTED system of injustice which will cause me to take this issue up in the Washington County, Vermont, Small Claims Court for replacement costs as detailed in my original grievance[.]" *Id.* (emphasis in original).

[5] In the February 13, 2018 Inmate Appeal to Final Review, Inmate again alleged that the grievance officer "failed to correctly confirm the fact that [he] had purchased all the items [that he] had listed as being missing from [his] cell and was not put on the property inventory slip [that he] never signed[.]" PFR Exhibit 5. Inmate also claimed that the grievance officer "never confirmed all [of his] canteen sales slips documenting [his] purchases of each and every item of property [that he] had listed[.]" *Id.* Inmate asserted that "this is further evidence of a cover-up of Camp Hill staff thei[v]ing," and questioned, "[W]hat other things are being covered up by the SCI Camp Hill system of injustice?" *Id.* He claimed, "Cover-up appears to be the policy here at SCI Camp Hill, with no correct attempt to investigate the truth of what happens, further confirming the fact that this SCI Grievance system is in truth and fact, BOGUS, CORRUPT, BIAS[ED] & slanted toward the Officers and is again [] clearly a system of injustice. See you in court. . . ." *Id.* (emphasis in original).

4

television and radio were damaged. It is not listed in policy that staff are to verify that electronic items are working when they are tasked with packing and inventorying your property when you are sent to the RHU. As stated in the Initial Response, your electronic items were listed on the [Form DC-153] and not noted as being damaged. Additionally, when you are sent to the RHU and your property is packed and inventoried, you would not sign off on the [Form] DC-153 due to your circumstances. You also list various Commissary items that you claim were missing from your property as well. It is just that, a list of items you claim to have purchased; there was no Confiscated Items Receipt issued to you for these Commissary items.[6] Even if you did provide a Commissary Receipt verifying that at some point in time you did purchase these items it only proves that [you purchased them]. These items are consumable items and these items will not be replaced or you reimbursed for them due to the temporary nature of these items.

PFR Exhibit 5.

On May 7, 2018, Inmate submitted an Inmate Appeal to Final Review of the Grievance denial,[7] and, on July 10, 2018, the Chief Grievance Officer again

---

[6] *See* DC-ADM 804, Section 1(A)(17) ("An inmate filing a grievance related to a claim of missing property must provide documentation such as a **DC-153A, Personal Property Inventory Sheet**; **DC-154A, Confiscated Items Receipt**; or a **Commissary/Outside Purchase Form** for evidence or proof that the property items were once in his/her possession. Failure to do so may result in the rejection of the grievance.") (emphasis in original); DC-ADM 804, Section 1(A)(22) ("In a case involving personal property, the inmate must clearly notify the Facility Manager or Facility Grievance Coordinator/designee to retain the property pending completion of the grievance process, including any appeal. This notification can be made within the initial grievance.").

[7] Inmate again claimed that "[o]n 12/11/2017, J-Unit staff packed [his] non-contraband personal property up that [he] had purchased from the Commissary and failed to pack up the attached lists of Commissary items," and that his "radio & T.V. were also damaged" and he "now need[ed] the replacement cost of [his] stolen and damaged attached purchased property." PFR Exhibit 5. He stated that he "was never allowed to put [his s]ignature on the [Form] DC-153 paper, to conf[i]rm [that he] had [his] property correctly rolled up out of [his] cell," and that "this stolen property appears to be a SCI-Camp Hill internal Staff policy or (M.O.), to punish
**(Footnote continued on next page…)**

5

returned the Grievance to SCI-Camp Hill "for additional review and appropriate response." PFR Exhibits 6, 7.

Ultimately, on August 13, 2018, Inmate again submitted an Inmate Appeal to Final Review based on an August 6, 2018 decision denying the Grievance on remand. PFR Exhibit 8. On October 12, 2018, the Chief Grievance Officer upheld SCI-Camp Hill's response stating, in pertinent part:

> In this grievance, you raise concerns of many missing property items from your move to the RHU on 12/13/17 and back to General Population on 1/3/18. You further indicate that your TV, radio, headphones for radio, and one pair of sunglasses were damaged. You mention that you never signed the property inventory form and sought to be compensated for the missing and damaged items.
>
> Review of the response provided [] finds that it is very thorough and addresses the concerns you have raised. This office finds that nothing further needs to be added to the response that you already received, and you provide no new information/evidence to support your concerns.[8] Therefore, this office upholds the responses provided to you and your requested relief is denied.

PFR Exhibit 9.

---

**(continued…)**

inmates for getting a misconduct write-up[.]" *Id.* He contended that "the SCI-Camp Hill Grievance Review . . . is corrupt, bias[ed] and slanted in favor of the SCI-Camp Hill officers." *Id.* He asked for "the replacement cost of [the] attached listed personal property from the Commonwealth [] one way or another!" *Id.*

[8] *See* DC-ADM 804, Section 2(B)(1)(g) ("An inmate filing an appeal related to a claim of missing property must provide documentation such as a **DC-153A, Personal Property Inventory Sheet**; **DC-154A, Confiscated Items Receipt**; or a **Commissary/Outside Purchase Form** for evidence or proof that property items were once in his/her possession. Failure to do so may result in dismissal of the appeal.") (emphasis in original).

On August 12, 2019, Inmate filed the instant PFR seeking judgment against the DOC, the Superintendent, and the Commonwealth in the amount of $500.00 plus court costs. PFR at 1. Although styled as ten "Causes of Action," the PFR merely sets forth the foregoing Grievance procedural history and references the Exhibits attached thereto. *See id.* at 1-6.[9] Inmate again asserted that the J-Unit staff at SCI-Camp Hill "issued a bogus disciplinary report," which resulted in his transport to RHU and his "cell property being roll[ed]-up or packed by the J-Unit Staff," and that he was denied the opportunity to sign the Form DC-153 listing the inventory and condition of the items that were packed up by the staff from his cell. PFR at 2. He recounted that he filed the Form DC-135A "in a[n] attempt to recover his 'lost' or (most-likely stolen by Staff non-contraband property)" "that [he] had purchased from [the C]ommissary and [the staff] failed to pack up . . . because he never received them [and his] radio and T.V. were also damaged." *Id.* at 3. *See also id.* at 3-5. In his final "Cause of Action," Inmate again assails the "bogus, slanted and corrupt alleged 'Grievance' process," he contends that his "stolen by [SCI-Camp Hill] Staff property has still never been

---

[9] As this Court has explained:

> "Pennsylvania is a fact-pleading jurisdiction. A complaint must therefore not only give the defendant notice of what the plaintiffs' claim is and the grounds upon which it rests, but it must also formulate the issues by summarizing those facts essential to support the claim." *Sevin v. Kelshaw*, [611 A.2d 1232, 1235 (Pa. Super. 1992)] (citation omitted); *see also Feigley v.* [*Department of Corrections*], 872 A.2d 189[, 196] (Pa. Cmwlth. 2005) (specific averments, rather than mere notice pleading, are required in cases within this Court's original jurisdiction).

*Unified Sportsmen of Pennsylvania v. Pennsylvania Game Commission*, 950 A.2d 1120, 1134 (Pa. Cmwlth. 2008).

returned, nor has any replacement cost been had," and that he has been subjected to "a bogus run-around by [DOC] Staff who are nothing more than criminals with badges sucking off the Commonwealth's taxpayers with their 'criminals with badges' work at [SCI-Camp Hill]." *Id.* at 6. By September 9, 2019 order, we granted Inmate's Application to Proceed *In Forma Pauperis* and directed Respondents to file an answer or otherwise plead within 30 days.

On October 10, 2019, Respondents filed the instant POs in the nature of a demurrer[10] asserting: (1) the Superintendent is not vicariously liable for the actions of her subordinates and Inmate does not allege any facts to indicate that she

---

[10] As this Court has explained:

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). Therefore, in considering Inmate's claims, we are limited to the allegations raised in the PFR; any additional claims or arguments contained in his brief filed in opposition to the POs will not be considered in disposing of the POs. *Id. See also Feigley*, 872 A.2d at 193 n.3 ("[The inmate] attempts to augment the averments in his Petition [for Review] by making various allegations in his three briefs and by attaching documents thereto. Factual disputes are framed by pleadings, not briefs, therefore, we do not consider these additional allegations and documents.").

8

personally engaged in, or directed the commission of, any actionable conduct with respect to his property; and (2) any claims against the Commonwealth, DOC, or its officials for intentional misconduct within the scope of employment of its employees are barred by sovereign immunity.[11]

Initially, with respect to Inmate's claims against the Superintendent, he does not allege in the PFR that she was personally involved in any of the actions that caused him to suffer damages. Thus, the PFR "contains no allegations that th[is] individual[] personally engaged in any wrongdoing or actionable conduct. Merely being in the 'chain of command' does not subject [her] to suit on a theory of vicarious responsibility. *DuBree v. Commonwealth*, 393 A.2d 293, 295 (Pa. 1978) [(plurarity opinion)]." *Price v. Simcox* (Pa. Cmwlth., No. 307 C.D. 2017, filed September 28, 2017), slip op. at 9. As a result, the PO in the nature of a demurrer is sustained and Inmate's claims against the Superintendent are dismissed.

Next, with respect to Inmate's claims against the DOC, as this Court has stated:

> Our Supreme Court has defined conversion as "an act of willful interference with a chattel, done without lawful

---

[11] *See* Article 1, Section 11 of the Pennsylvania Constitution, Pa. Const. art. I, §11 ("Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."); Section 2310 of the Pennsylvania Consolidated Statutes, 1 Pa. C.S. §2310 ("[T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity . . . and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth . . . shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure)[.]"); Section 8521(a) of the Judicial Code, 42 Pa. C.S. §8521(a) ("Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa. C.S. §2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.").

9

justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corp. v. Central-Penn National Bank*, [254 A.2d 637, 638 (Pa. 1969)]. The Supreme Court also cited with approval Prosser's description of the ways in which a conversion can be committed:

(a) Acquiring possession of the goods, *with an intent to assert a right to them which is in fact adverse to that of the owner*.

(b) Transferring the goods in a manner which deprives the owner of control.

(c) Unreasonably withholding possession from one who has the right to it.

(d) Seriously damaging or misusing the chattel in defiance of the owner's rights.

*Id.* (*quoting* Prosser, Torts §15 (2d ed. 1955)) (emphasis added). A claim for conversion arises from an intentional and not a negligent act.

*Stokes v. COI Gehr* (Pa. Cmwlth., No. 332 C.D. 2011, filed October 19, 2011), slip op. at 4.[12, 13]

---

[12] *See* 210 Pa. Code §69.414(a) (an unpublished memorandum opinion, although not binding precedent, may be cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures).

[13] As a federal District Court has explained:

An individual commits the tort of trespass to chattels by intentionally dispossessing another person of a chattel or intermeddling with a chattel in another person's possession. *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. [] 2005). If the interference with the owner's right of possession is sufficiently severe to permanently deprive him or her of that right, the trespass culminates in a conversion. *Baram v. Farugia*, 606 F.2d 42, 43-44 (3d Cir. 1979). A conversion can

**(Footnote continued on next page…)**

The gravamen of Inmate's claims against the DOC are that its officers in J-Unit stole the missing property and intentionally mishandled his television, radio and sunglasses thereby depriving him of their use. *See* PFR at 6, Exhibits 3, 5, 6. As outlined above, such actions sound in intentional tort thereby shielding the DOC from liability based on sovereign immunity. *Williams v. Stickman*, 917 A.2d 915, 917 (Pa. Cmwlth. 2007); *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992); *Stokes*, slip op. at 4.

Nevertheless, in his brief in opposition to the POs, Inmate argues that his claims fall within the exception to sovereign immunity provided by Section 8522(b)(3) of the Judicial Code, which states that "the defense of sovereign immunity shall not be raised to claims for damages caused by . . . [t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including . . . property of persons held by a Commonwealth agency[.]" 42 Pa. C.S. §8522(b)(3).

---

**(continued…)**

> occur even if the defendant does not appropriate the property for his or her own use. *Central Transport, LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 218-19 (E.D. Pa. 2012). . . .
>
> Trespass to chattels and conversion are both intentional torts. *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 233 (E.D. Pa. 2012). They do not sound in negligence. *Adams v. Ryan & Christie Storage, Inc.*, 563 F. Supp. 409, 412 (E.D. Pa. 1983) (describing "the concept of conversion which prevails in Pennsylvania" as "a concept a long distance from negligence"). Commonwealth parties are immune from liability for damages attributable to intentional torts. *Williams v. Stickman*, 917 A.2d 915, 917 (Pa. [Cmwlth.] 2007).

*Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 402 (W.D. Pa. 2014) (footnote omitted).

11

However, "[h]e is incorrect. The exceptions to sovereign immunity are only applicable in situations where sovereign immunity has been waived. As explained above, immunity has not been waived for intentional acts such as conversion." *Stokes*, slip op. at 4-5 n.5. Likewise, as explained above, the allegations raised in the instant PFR and the Exhibits attached thereto set forth claims grounded in intentional acts for which sovereign immunity has not been waived. *Id.* As a result, the PO in the nature of a demurrer is sustained and Inmate's claims against the DOC are dismissed.

Finally, with respect to Inmate's claims against the Commonwealth, as this Court has explained:

> The waiver of sovereign immunity in Section 8522 of the Judicial Code applies only to claims against Commonwealth agencies and employees, and does not waive the immunity of the Commonwealth itself. 42 Pa. C.S. §§8501,[14] 8522; *Tork-Hiss* [*v. Commonwealth*, 735 A.2d 1256, 1258 (Pa. 1999)]; *Russo* [v. *Allegheny County*, 125 A.3d 113, 118 (Pa. Cmwlth. 2015)]; *Hall v. Acme Markets, Inc.*, 532 A.2d 894, 897 (Pa. Cmwlth. 1987). Inmate's claims against [the] defendant Commonwealth are therefore barred by sovereign immunity, notwithstanding the personal property exception to sovereign immunity in Section 8522(b)(3).

*Owens v. Commonwealth* (Pa. Cmwlth., No. 2624 C.D. 2015, filed September 23, 2016), slip op. at 4. As a result, the PO in the nature of a demurrer is sustained and Inmate's claims herein against the Commonwealth are dismissed.

---

[14] Section 8501 of the Judicial Code defines "Commonwealth party" as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment."

Accordingly, the POs in the nature of a demurrer are sustained, and the PFR is dismissed with prejudice.


_____

MICHAEL H. WOJCIK, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James T. Burke,               :
                             :
             Petitioner   :
                             :
        v.                :  No. 452 M.D. 2019
                             :
Pennsylvania Department of   :
Corrections, Superintendent Laurel  :
Harry and the Commonwealth of  :
Pennsylvania              :
                             :
            Respondents  :

O R D E R

AND NOW, this 6th day of May, 2020, the Preliminary Objections of the Pennsylvania Department of Corrections, Superintendent Laurel Harry, and the Commonwealth of Pennsylvania are SUSTAINED, and James T. Burke's Petition for Review, styled as a "Civil Complaint," is DISMISSED with prejudice.

_____
MICHAEL H. WOJCIK, Judge